789 So.2d 766 (2001)
STATE of Louisiana
v.
Michael WILSON.
No. 00-KA-1378.
Court of Appeal of Louisiana, Fifth Circuit.
June 27, 2001.
*767 Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, Nancy Miller, Walter G. Amstutz, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Frederick Kroenke, Baton Rouge, for Defendant/Appellant Michael Wilson.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
DALEY, Judge.
Defendant, Michael Wilson (A/K/A Michael Williams), appeals from his sentence for armed robbery. On appeal, he assigns the following errors:
1. The trial court erred in imposing a sentence herein which is unconstitutionally excessive.
2. The failure of trial counsel to file a Motion to Reconsider the Sentence should not preclude this court considering the constitutionality of the sentence; and, in the event that it does, then the failure of trial counsel constitutes ineffective assistance of counsel.
For the reasons which follow, we affirm the sentence.

PROCEDURAL HISTORY
On September 8, 1999, the Jefferson Parish District Attorney filed a Bill of Information charging defendant, Michael Wilson, with one count of armed robbery in violation of LSA-R.S. 14:64. At his arraignment on September 14, 1999, defendant pled not guilty.
On January 5, 2000, the State amended the Bill of Information to add several aliases allegedly used by the defendant. Defendant was tried by a jury of 12 on January 10 and 11, 2000, and at the conclusion of trial, the jury returned a verdict of guilty as charged.
On January 21, 2000, the trial court sentenced defendant to imprisonment at hard labor for a term of 45 years without benefit of parole, probation, or suspension of sentence. The judge stipulated that the sentence was to run consecutively to a sentence imposed for a separate conviction in the Twenty-Fourth Judicial District Court. Defendant made an oral Motion for Appeal. He filed a written Motion for Appeal on January 27, 2000, which was granted by the trial court on February 22, 2000.
On January 27, 2000, the State filed a habitual offender Bill of Information, alleging that defendant was a third felony offender. On February 4, 2000, defendant denied the allegations in the habitual offender bill. The habitual offender hearing was continued numerous times. Finally, on May 8, 2001, the court took up the matter. As part of a sentencing agreement, the State amended the habitual offender bill to allege only one prior felony conviction. The court advised defendant *768 of his rights against self-incrimination, and to a habitual offender hearing.[1] Defendant waived those rights and, pursuant to his agreement with the State, he admitted to being a second felony offender. The trial court thereafter vacated defendant's original sentence, and imposed an agreed upon sentence of 49 years, six months at hard labor, without benefit of parole, probation, or suspension of sentence. The court ordered that the sentence be served concurrently with a sentence defendant was already serving.

FACTS
At about 10:00 p.m. on August 4, 1999, Reverend David Shelton and his son, Sean, were at a Racetrac[2] filling station on Manhattan Boulevard in Harvey, purchasing gasoline. While Reverend Shelton pumped gas into his Buick automobile, Sean remained in the car's front passenger seat. Reverend Shelton had left the keys inside the car. Defendant approached the car and asked Reverend Shelton for a cigarette. Shelton told the defendant he did not have any cigarettes.
Defendant then walked to the driver's side of the car and opened the door. Reverend Shelton could see defendant had a pistol in his hand. Defendant told Reverend Shelton to run. Defendant got into the driver's seat and ordered Sean to get out of the car. Sean also saw the pistol, and he complied with defendant's demand. Defendant started the car and drove away from the scene.
Reverend Shelton called the police on his cellular telephone to report the incident. Officers reported to the filling station and took statements from the victims. The Sheltons described the stolen car and the defendant's physical appearance. Reverend Shelton testified that he did not give the defendant permission to take his car, and that the defendant used force and intimidation against him by producing the gun.
At about 11:30 p.m. that night, defendant drove the car into a tree on Sauvage Road in Marrero. Arthur Bachot, who lived nearby, went to the wrecked car and saw that the defendant was still in the driver's seat. Bachot approached defendant and asked whether he was injured, and defendant did not respond. Bachot testified that defendant looked dazed, and that he was trying to start the car.
Odi Hood, another neighbor at the accident scene, testified that when the defendant was unable to start the car, he got out and said, "I'm leaving." Paramedics arrived and tried unsuccessfully to keep defendant from leaving the area.
Police arrived at the scene of the crash to make an accident report. Defendant returned on foot while the officers were there. Bachot and Hood both pointed the defendant out as the driver of the car. The defendant was then detained. Detective John Carroll sent for the victims, who were then transported by officers to the accident scene. Reverend Shelton identified his car, and after separately viewing the defendant, both Reverend Shelton and Sean identified him as the man who had taken the car. Detective Carroll testified that he discovered defendant used several *769 different names, including Michael Wilson, Michael Williams, and Michael Dunsrow.
Reverend Shelton testified that his satchel, containing several personal items, was missing from the car when it was recovered. Those items were never found. Detective Carroll testified that no gun was ever recovered in this case.
Defendant testified that he did not rob Reverend Shelton of his car. He stated that he was walking to the Racetrac station on the night of August 4, 1999 to buy beer and cigarettes. On the way, a prostitute named Coco, who knew him to be a drug dealer, stopped him and asked him for drugs. When the defendant asked how she would pay for the drugs, the woman said she would trade the car parked at the filling station. He stated that Coco approached the man who was pumping gas into the car and spoke with him. She then told defendant that a deal had been struck with the car's owner, and the defendant gave her some crack. According to the defendant, the older man told the young passenger to get out of the car, and the two walked toward a motel next to the filling station. Defendant then drove away in the car.
Defendant testified that he went home and consumed a large quantity of drugs and alcohol, and then went for a ride in the car. He stated that he was "out of it" due to the drugs and alcohol, and ran into the tree as a result. Defendant testified that he walked away from the scene of the accident, but it was not his intention to evade police. He stated that the car's airbag deployed on impact and broke his jaw, but that he was so "loaded" he did not realize he was injured.
Defendant said he does not own a gun, and that he believed he had the authority to use the car based on what Coco told him. Defendant testified that he believed Coco was associated with the owner of the car, and that she had the authority to lend it to him.
Luanne Rounsville, defendant's girlfriend, testified that defendant does not own a car, but that she has seen him driving many different cars. She stated that the defendant commonly "rents" cars from others in exchange for drugs.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in imposing a sentence herein which is unconstitutionally excessive.

ASSIGNMENT OF ERROR NUMBER TWO
The failure of trial counsel to file a Motion to Reconsider the Sentence should not preclude this court considering the constitutionality of the sentence; and, in the event that it does, then the failure of trial counsel constitutes ineffective assistance of counsel.
By these assignments, the defendant argues that the court imposed an excessive sentence, and that his trial counsel was ineffective for failing to preserve his appeal rights by filing a timely Motion to Reconsider Sentence. Defendant's appeal in the instant case was filed before he was re-sentenced as a habitual offender. Because the defendant's original sentence, which he challenges herein, was vacated by the trial court, we find that these facts render defendant's Assignments of Error moot.
It is further noted that defendant is precluded from challenging his habitual offender sentence, since it was agreed upon by the parties before defendant entered his admission to the habitual offender bill. Under LSA-C.Cr.P. art. 881.2A(2), a "defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record *770 at the time of the plea." This Court has applied these provisions to cases in which a defendant admits to the allegations in a habitual offender bill as part of a sentencing agreement. See, State v. Stanley, 98-920, p. 10 (La.App. 5th Cir.2/10/99), 729 So.2d 33, 37, writ denied, 99-0614 (La.6/25/99), 745 So.2d 1186; State v. Francis, 98-811, p. 8 (La.App. 5th Cir.1/26/99), 727 So.2d 1235, 1240, writ denied, 99-0671 (La.6/25/99), 746 So.2d 597. Based on the foregoing, we find that this Court is left with nothing to review with respect to defendant's excessive sentence claim.

ERRORS PATENT DISCUSSION
The record, including the habitual offender proceedings, was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The following matters are presented for review.
On January 5, 2000, in open court and in defendant's presence, the State amended the Bill of Information to include several of defendant's aliases. The record does not reflect that defendant was arraigned as to the amended Bill of Information. The record also does not show that defendant raised a timely objection to the trial court's failure to arraign him on the amended bill. A defendant waives any irregularity in arraignment by proceeding to trial without objection. LSA-C.Cr.P. art. 555; State v. Richardson, 00-134, p. 6 (La.App. 5th Cir.9/26/00), 770 So.2d 454, 457. We find that this error requires no corrective action.
It is further noted that the trial judge failed to advise the defendant of the prescriptive period for post-conviction relief.[3] LSA-C.Cr.P. art. 930.8 provides that a defendant has two years after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. Subpart C of the article requires that the trial court inform the defendant of the prescriptive period at the time of sentencing. Therefore, we hereby order the district court to send written notice of the prescriptive period to the defendant within ten days of the rendering of this opinion, then to file written proof in the record that defendant received said notice.
For the foregoing reasons, the defendant's conviction and sentence are affirmed and this matter is remanded to the district court for the limited purpose of sending the defendant notice of the prescriptive period for seeking post conviction relief.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Louisiana jurisprudence has consistently held that, in a habitual offender proceeding, a trial court must advise a defendant of his right to a hearing at which the state is required to prove the allegations of the habitual offender bill, and of his right to remain silent. State v. Chirlow, 99-142, p. 8 (La.App. 5 Cir. 6/1/99), 738 So.2d 679, 684. The trial court complied with those requirements in the instant case.
[2] The name of the filling station is incorrectly spelled "Racetrack" in the transcript.
[3] Both the original commitment and the habitual offender commitment state that defendant was informed of the prescriptive period for post-conviction relief, but such advisal does not appear in the transcript. As between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).