829 So.2d 541 (2002)
STATE of Louisiana
v.
Lee STEELE.
No. 01-KA-1414.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2002.
*543 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Churita H. Hansell, Frank Brindisi, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee, State of Louisiana.
Jane L. Beebe, Gretna, LA, for Defendant-Appellant, Lee Steele.
Lee Steele # 180309, Washington Correctional Institute, Angie, LA.
Panel Composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On May 25, 2000, defendant, Lee Steele, was charged by bill of information with the March 10, 2000 aggravated battery of Eugene Bazley, which was perpetrated with the use of a gun in violation of LSA-R.S. 14:34. On May 30, 2000, Steele was arraigned and entered a plea of not guilty. On September 13, 2000, defendant filed pre-trial motions, including motions to suppress and motion for preliminary examination. On the same date, a hearing was held on defendant's motions and the motions were denied. Following the motion rulings on that date, trial was held before a six-person jury. Thereafter, the jury returned a unanimous verdict of guilty of the lesser included offense of second-degree battery. LSA-R.S. 14:34.1.
On September 27, 2000, the date set for sentencing, defendant filed a motion for a new trial and a motion for post-verdict judgment of acquittal, and these motions were denied by the trial court judge. Thereafter, on the same date, defendant advised the trial judge that he was ready for sentencing. The trial judge sentenced the defendant to five years at hard labor with credit for time served. Defendant lodged an objection to the sentence and *544 filed a written motion for reconsideration of sentence that was denied by the court. Defendant made an oral motion for appeal[1] that was followed by a written motion for appeal. On September 27, 2000, the trial judge granted the motion for appeal.
The State then filed a multiple bill wherein it alleged defendant was a third-felony offender. LSA-R.S. 15:529.1. A written objection to the multiple bill was filed by defendant on March 22, 2001. A hearing on the multiple bill was held on July 26, 2001. On this date, after being advised of the rights he was relinquishing and choosing to waive those rights, defendant withdrew his former denial of the allegations of the multiple bill. Defendant accepted the State's offer of a ten-year sentence as a second felony offender, and defendant admitted to the allegations of the multiple bill. The trial judge, being satisfied with the knowing and voluntary nature of the admission, accepted defendant's admission. The trial judge then vacated the defendant's former sentence and sentenced the defendant as a second-felony offender to serve ten years of imprisonment at hard labor without benefit of probation or suspension of sentence, in accord with the negotiated plea.
Defendant now appeals on the basis of several assignments of error.
FACTS
At approximately midnight on March 10, 2000, Melanie McMullen arrived home to her apartment at 112 Holmes Boulevard, Apartment A-3 in Terrytown with her boyfriend, Lee Steele. Ms. McMullen and Mr. Steele had met each other in November of 1999. They were living together at the time of this incident. Ms. McMullen worked as a security guard and she carried a gun. On this night, as was her routine, she placed the gun atop the refrigerator when she arrived home. Shortly after arriving home that night, a knock was heard at the door. It was Eugene Bazley, the father of one of Ms. McMullen's three children, a five-year-old boy. Mr. Bazley had not seen Ms. McMullen or his son for about a year before this incident. Mr. Bazley and Ms. McMullen had an eight-year relationship that ended in 1999. Although he knew Ms. McMullen was seeing someone, he did not know that Steele was living with Ms. McMullen. On this night, Eugene Bazley was admittedly intoxicated and he asked to see his son. The events surrounding the shooting are in conflict:
Ms. McMullen testified that, after she answered the door, she told Mr. Bazley to leave because he was intoxicated and McMullen shut the door. According to Ms. McMullen, Bazley did not try to enter her apartment at this time, did not raise his voice or in any way act threatening. Ms. McMullen indicated that Mr. Steele participated in the conversation. She testified at trial that Steele had a "bad demeanor" and that on this night, Steele responded to Bazley with anger, raising his voice and cursing.
Ms. McMullen stated that following the encounter she went upstairs to take a bath and did not see or hear anything unusual. According to Ms. McMullen, she ran her bath and brushed her teeth, and during this time she did not hear a gunshot. After running her bath, Ms. McMullen did hear people talking downstairs, and Mr. Steele later advised her that he had been *545 speaking with police and that someone had been shot. She testified that Mr. Steele did not tell her of his involvement in the shooting or that he acted in self-defense. According to Ms. McMullen, when she returned downstairs the defendant was gone. Ms. McMullen also testified that she had not seen her gun since the night of this incident.
Ms. McMullen further testified that, a month after this incident, she and the victim resumed a relationship. At the time of trial, Ms. McMullen and Mr. Bazley were engaged.
The victim, Eugene Bazley, also testified at trial. He stated that he went to Ms. McMullen's apartment at about midnight and wanted to talk to Ms. McMullen about his son. Mr. Bazley admitted that he had been drinking and was drunk on the night of this incident. According to Mr. Bazley, he arrived at Ms. McMullen's apartment and knocked on the door. When Ms. McMullen came to the door she saw that Mr. Bazley had been drinking and she told him to leave. According to Mr. Bazley, Ms. McMullen left and Mr. Steele came to the door. Mr. Steele told Mr. Bazley that Bazley's son was now "his son." According to Mr. Bazley, this statement aggravated Bazley, but he did not let it get to him. Mr. Bazley testified that he explained that he did not want trouble but he wanted to talk to his son's mother about his son. Mr. Bazley stated that Steele went into the apartment and slammed the door, but Steele then returned with a gun and shot Bazley. According to Mr. Bazley, he saw the gun and attempted to dodge the bullet but he was shot in the arm. Mr. Bazley testified that he had no weapon, did not try to break into the apartment and neither threatened nor attacked Steele. Mr. Bazley was the only eye-witness to the shooting to testify at trial.
Following the shooting, Mr. Bazley ran to a nearby store for help. After reaching the store, he collapsed on the ground.
At approximately midnight on March 10, 2000, Jefferson Parish Sheriff's Officers Charles Lester and Terry Green were on routine patrol in the area of Danny & Clyde's Store located at 123 Terry Parkway. The officers saw the victim, a black male with a bullet hole in his arm, lying on the ground at this location. Officer Green remained with the victim, Mr. Bazley, while Officer Lester followed the trail of blood to McMullen's apartment. Paramedics worked on the victim before transporting him to West Jefferson General Hospital where he underwent surgery.
Officer Lester knocked on the apartment door in order to see if anyone knew about the shooting. Mr. Steele answered the door and, when questioned, he stated that he did not hear or see anything. Ms. McMullen was not present at that time.
During the investigation, a projectile was located in the grass about ten feet from the door of the apartment and the area was roped off as a crime scene. Several times during this investigation Steele came out and then went back into the apartment. Finally, the police sergeant on the scene told Steele to either leave or go inside the apartment. Steele left the scene. The crime scene was photographed. The gun was not recovered.
Officer Lester later spoke with Ms. McMullen and discovered that she had no independent knowledge of the shooting, but that she learned from Mr. Bazley that Steele had shot Bazley. Upon learning this fact, Ms. McMullen felt that she had to say something. Ms. McMullen was told to call the police if Steele returned. A few weeks later Ms. McMullen called police and Steele was arrested.
*546 DISCUSSION
By his first assignment of error, defendant contends that because of the overwhelming evidence that he acted in self-defense, the evidence was insufficient to convict him of the crime of second-degree battery. We disagree.
In a case challenging the sufficiency of the evidence, this Court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82. In applying this standard, the reviewing court will not assess credibility nor reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986). The trier of fact shall evaluate credibility and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.
The defendant in this case was charged with aggravated battery. LSA-R.S.14:34. The jury returned a responsive verdict of guilty of second degree battery. LSA-R.S. 14:34.1. The offense of second degree battery is defined as follows:
LSA-R.S. 14:34.1. Second degree battery.
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty, or a substantial risk of death.
In order to convict a person of second-degree battery, the State must prove beyond a reasonable doubt: (1) the intentional use of force or violence upon the person of another; (2) without the consent of the victim; and (3) when the offender intentionally inflicts serious bodily injury. State v. Wegmann, 98-1368 (La. App. 5 Cir. 5/19/99), 734 So.2d 973, 974, citing State v. Fuller, 414 So.2d 306 (La. 1982).
Defendant does not dispute the proof of the requisite elements of the charged offense. Rather he alleges that self-defense was clearly proven by a preponderance of the evidence.
The defendant contends that his actions were justified as self-defense, defense of others and defense of property. Justification is defined in LSA R.S. 14:18, which provides in pertinent part as follows:
LSA R.S. 14:18. Justification; general provisions
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
. . . .
(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm and the offender reasonably believes the person making the threats is present and would immediately carry *547 out the threats if the crime were not committed; or
(7) When the offender's conduct is in defense of persons or of property....
Under certain circumstances, use of force is a valid defense. The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. LSA-R.S. 14:19. Additionally, one may use force or violence in defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person. LSA-R.S. 14:22.
Additionally, an aggressor generally cannot claim self-defense. LSA-R.S.14:21, provides as follows:
LSA-R.S. 14:21. Aggressor cannot claim self-defense.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Although the defendant fails to address the issue of who bears the burden of proof, the law in this circuit is that the defendant, in a non-homicide case, has the burden to establish, by a preponderance of the evidence, that he acted in self-defense. State v. Barnes, 491 So.2d 42, 44-47 (La. App. 5 Cir.1986). In a homicide case, the State would have the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Garcia, 483 So.2d 953, 956 (La.1986); State v. Batiste, 96-1010, (La.App. 5 Cir. 1/27/98), 708 So.2d 764, 771, writ denied, 98-0913 (La.9/4/98), 723 So.2d 954.
The Louisiana Supreme Court has recognized that "justification" defenses "are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused's conduct excusable on policy grounds [hence] such defenses should be treated as affirmative defenses which the accused must establish by a preponderance of the evidence." See: State in the Interest of M.L., 95-0045 (La.9/5/95), 660 So.2d 830, 834, quoting State v. Cheatwood, 458 So.2d 907 (La.1984). Accord, State v. Lockett, 00-859 (La.App. 5 Cir. 11/28/00), 775 So.2d 1086, 1088, writ denied, 01-0498 (La.2/1/02), 808 So.2d 336.
Although defendant contends that his actions were justified in that he acted in self-defense, defense of others and lawful defense of property, the jury apparently found that the defendant failed to meet his burden of proof in establishing his claim of self-defense. We find this determination to be well supported by the evidence in the record.
This assignment of error has no merit.
By his next assignment, defendant contends that the trial judge erred in refusing to grant a mistrial when the State, in closing argument, made reference to the defendant's failure to claim self-defense at the time the defendant spoke with the investigating officer following the shooting. Defendant alleges that this was a violation of his right to remain silent and that it impermissibly shifted the burden of proof to the defendant.
During closing argument, the defense counsel alleged that the defendant shot the victim but he acted in defense of self and defense of property. As part of *548 the closing argument, defense counsel argued the following:
MR. WILLIAMS [Defense counsel]:
And sure enough, Mr. Steele, out of fear, and for justification of his property, himself, and at that time what he considered to be his family, obviously, by the victim's own testimony, he did what he had to do, or he felt he had to do, to protect themselves.
In reply, the State argued that there was no evidence that Mr. Bazley was the aggressor or that this was a case of self-defense. During the closing argument by the State the following statements were made:
MR. FREESE [D.A.]:
Did you hear the police officer say that Lee Steele came to me and said, I shot him because he was an angry drunk man trying to break in my apartment, and he was an angry drunk man trying to attack me?
MR. WILLIAMS:
I'm going to object to that, Judge, I'm going to object to that. The defendant is not required to say anything, Judge.
MR.FREESE:
Your Honor, we're talking about the evidence here, what he did and did not say to the police officer on the scene.
THE COURT:
Objection sustained.
MR. FREESE:
Did you hear anything from anyyou know, from either the police officers who testified, including the police officer who came in contact with him, suggesting that Mr. Steele had claimed that he acted in self defense? No, you did not.
Did he have an opportunity, if he was the wrong party, to say, I was attacked, I'm the victim here? Oh, yeah. Did he have every opportunity to do that? Absolutely.
Mr. Williams suggests that this officer is concocting his contact with the defendant that night. This kid who's been on the force for four years, who has doesn't know this man, there is no evidence that there has ever been any contact between them before, that he has anything to gain. Do you believe that he would come in here and lie to you, would commit perjury about what Lee Steele said to him that night, his contact with Lee Steele? No, that officer told you the truth, and the truth is, this man just snuck away in the night.
Following closing argument, defendant moved for a mistrial on the basis that the State, in closing argument, made reference to "the defendant not taking the witness stand and what he could have said had he taken it, or would have said had he taken it." Defendant specifically noted that after he lodged an objection during closing arguments, this line of argument by the State continued. The State responded that no reference was made to defendant's failure to testify; rather, the argument centered on the evidence adduced at trial, concerning the defendant's conversation with the investigating officer, in particular, what defendant did and did not say to the officer. After hearing this argument, the trial judge denied the motion for a mistrial, over defendant's objection.
On appeal, defendant first argues that he was prejudiced by the State's argument because it shifted the burden of proving self-defense to him. Therefore, relying on LSA-C.Cr.P. art. 771, he reasons that an admonition was warranted.
LSA-C.Cr.P. art. 771 provides for an admonition to the jury under certain circumstances:
LSA-C.Cr.P. art. 771. Admonition.
In the following cases upon the request of the defendant or the state, the *549 court shall promptly admonish the jury to disregard a remark or comment made... in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by ... the district attorney ... and the remark is not within the scope of Article 770.
. . . .
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
As previously discussed in assignment of error number one, in this Circuit in a nonhomicide case such as this one, the defendant bears the burden of proving self-defense by a preponderance of the evidence. State v. Barnes, supra. The remarks by the prosecutor in closing were not made to suggest that the defendant failed to testify at trial but to counter the defense suggestion that the shooting was in self-defense. Accordingly, the trial judge did not err in refusing to give an admonition on this basis.
Defendant next argues that the trial judge erred in refusing to grant a mistrial when, in closing argument, the prosecutor made reference to defendant's silence in responding to police questioning.
Whether a mistrial should be granted is within the sound discretion of the trial court and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. State v. Pascual, 98-1052 (La.App. 5 Cir. 3/30/99), 735 So.2d 98, 104.
The United States Supreme Court, in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), held that the use, for impeachment purposes of petitioner's silence at the time of arrest and after receiving the Miranda warnings, violates the Due Process Clause of the Fourteenth Amendment. Thus, the prosecutor may not use the fact of the accused's exercise of his constitutional right to remain silent, after he has been advised of his right, solely to ascribe a guilty meaning to his silence or to undermine, by reference, an exculpatory version related by the accused, for the first time at trial. State v. Arvie, 505 So.2d 44, 46 (La.1987).
In the present case, the prosecutor's reference to defendant's silence at the time of his initial questioning by police was permissible. Clearly, at the time of this encounter and questioning by police, defendant was not under arrest; he was not even a suspect. As such, he had no constitutionally protected right to remain silent and the prosecutor's reference to this fact was not prohibited. Under these circumstances, the trial judge correctly denied the motion for a mistrial.
Finally, defendant alleges that the trial judge erred in refusing to grant a mistrial because the prosecution's rebuttal during the closing arguments constitutes a reference to the defendant's failure to testify.
The scope of argument is provided for in LSA-C.Cr.P. art. 774, which provides as follows:
LSA-C.Cr.P. art. 774. Argument scope.
The argument shall be confined to evidence admitted, to lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice

*550 The state's rebuttal shall be confined to answering the argument of the defendant.
(Emphasis added).
In State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1036, writ denied, Casey v. Louisiana, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000), the Louisiana Supreme Court discussed the scope of closing argument and the standard of review:
The general rule concerning the scope of closing arguments is that they are confined to `evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.' Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. Further, the trial judge has broad discretion in controlling the scope of closing argument. And, even if the prosecutor exceeds these bounds, the court will not reverse a conviction unless `thoroughly convinced' that the argument influenced the jury and contributed to the verdict.
(Citations omitted; emphasis added).
The Louisiana Supreme Court, in State v. Langley, 95-1489 (La.4/14/98), 711 So.2d 651, 660 (on reh' g), discussed the standard for evaluation of a prosecutor's direct reference versus an indirect reference to the defendant's failure to testify:
If the prosecutor makes a direct reference to the defendant's failure to testify, a mistrial should be declared, regardless of the prosecutor's intent.... But when the prosecutor's reference is not direct, the reviewing court inquires into the remark's "intended effect on the jury" to distinguish between impermissible indirect reference to the defendant's failure to testify and permissible general statements that the prosecution's case is unrebutted....
(Citations omitted).
In the present case, the prosecutor's reference was oblique and indirect, and was not used to ascribe a guilty meaning to the silence. Moreover, a review of the full text of the argument indicates that the intent of the prosecutor was to inform the jury of "the lack of evidence" to support defendant's position that his actions in shooting Mr. Bazley were legally justified as self-defense, defense of others or lawful defense of property. Stated another way, the prosecutor's argument illustrated for the jury that its case was unrebutted. Such an argument is permissible within the parameters of LSA-C.Cr.P. art. 774.
Under these circumstances, we conclude that the trial judge did not err in refusing to grant the defendant's motion for a mistrial.
Moreover, even assuming for the sake of argument that the prosecutor's comment was a direct reference to the defendant's failure to testify, the error is, nonetheless, harmless. That is, the record clearly establishes, by uncontroverted evidence, that Steele shot and injured Bazley in an unprovoked encounter. Under these circumstances, we fail to find that the argument influenced the jury and contributed to the verdict. State v. Casey, supra.
This assignment of error is without merit.
PRO SE ASSIGNMENTS OF ERROR
By his first pro-se assignment, defendant contends that the State should have the burden to establish that he did not act in self-defense, rather than defendant having the burden of proving that he did act in self-defense. He reasons that, under the law as it currently exists, he "was placed in the position of either testifying or having absolutely no realistic chance of *551 establishing by a preponderance of evidence that his actions were justified." Essentially, he is arguing that the current standard wherein defendant must prove the affirmative defense violates his right to due process.
In State v. Cheatwood, supra, 458 So.2d at 910, the Louisiana Supreme Court quoted from the United States Supreme Court in Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) as follows:
"The Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required...." 97 S.Ct. at 2327.
The supreme court in Cheatwood, supra, also discussed the State's constitutional and statutory requirements regarding this issue:
It is logical to conclude that the Legislature intended to require the state to prove beyond a reasonable doubt only the elements of the offense and to require defendant to prove by a preponderance of evidence the exculpatory circumstances constituting the `affirmative' defense. The statutory provisions setting forth the state's burden of proof refer only to the requirement that the state prove the elements of the crime not that the state disprove the exculpatory circumstances constituting defenses which defeat criminal culpability despite proof of the presence of all the elements of the offense. (Citations omitted; italics as found in original).
Additionally, in State v. Barnes, supra, 491 So.2d at 47, this Court adopted the Cheatwood standard:
We therefore agree with the Cheatwood Court that the Louisiana legislature intended to require the state to prove only the essential elements of the offense and to require the defendant to prove the exculpatory circumstances by a preponderance of the evidence.
Therefore, the defendant's burden of proof of the affirmative defense of justification has been sanctioned by both the United States Supreme Court, under the United States Constitution, and by the Louisiana Supreme Court, under the constitution and laws of this state and applied by this Court.
Moreover, a review of the record indicates that, even though defendant elected to exercise his right to remain silent, he, nonetheless, effectively asserted his defense of justification at trial, through the cross-examination of the State's witnesses and in closing argument. Obviously, his presentation at trial had some impact upon the jury because they returned a verdict for second-degree battery rather than aggravated battery. For these reasons, this assignment of error lacks merit.
Defendant next contends that his defense counsel was ineffective in: (1) incorrectly reciting the elements of the crime of aggravated battery during closing argument; (2) failing to seek a curative instruction or mistrial when the prosecutor, during trial, made reference to his decision not to speak to police and not to testify, and (3) failing to file a motion to reconsider sentence so as to protect defendant's claim that his sentence was excessive and the trial judge did not follow sentencing guidelines.
The United States Constitution and the Louisiana Constitution guarantee effective assistance of counsel. U.S. Const. amend. VI; La. Const. of 1974, art. I, § 13. The purpose of the guarantee is not to improve the quality of legal representation *552 but rather simply to ensure that criminal defendants receive a fair trial. Roe v. Ortega, 528 U.S. 470, 481, 120 S.Ct. 1029, 1037, 145 L.Ed.2d 985, 997 (2000). A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), reh' g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). Under the Strickland test, the defendant must show (1) that his counsel's performance was deficient, that is that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674. In its evaluation, the court must accord great deference to counsel's performance, consider the performance based on the particular facts involved and from the counsel's perspective at the time. Strickland v. Washington, 466 U.S. 668, 694-695, 104 S.Ct. 2052, 80 L.Ed.2d 674.
Claims of ineffective assistance are generally relegated to post-conviction, unless the record permits definitive resolution on appeal. State v. LaCaze, 99-0584, p. 43, 824 So.2d 1063 (La.1/25/02).
Defendant first argues that his trial counsel was ineffective in not objecting to the prosecutor's erroneous statement of the elements of aggravated battery. He further alleges that had he done so "the case may well have ended in an acquittal."
During closing argument, the prosecutor made the following statement, "What the State has to prove is that force or violence was used against Mr. Bazley, that it was done by him intentionally. That's it, that's all we have to prove."
Defendant contends that the prosecutor failed to indicate that he had to prove that the offense was committed with a dangerous weapon and that the dangerous weapon was used in a manner calculated to cause death or great bodily harm.
Defendant was charged with aggravated battery that is defined as follows: "Aggravated battery is a battery committed with a dangerous weapon."
The trial judge gave the jury an instruction that defined "aggravated battery." During instructions, the jury was advised as follows: "Aggravated battery is the intentional use of force or violence on the person of another with a dangerous weapon."
The trial judge also instructed the jury that they were to follow the law as given to them by the trial judge.
Even though the elements of the offense of aggravated battery, as relayed by the prosecutor during closing argument were incomplete, the trial judge presented the jury with a correct definition of aggravated battery and ordered the jury to follow the law as given by him. Under these circumstances, the defendant cannot claim prejudice. More importantly, defendant was not convicted of aggravated battery, but rather of a lesser and included offense of second-degree battery. Defendant failed to meet the prejudice prong of the Strickland test.
Defendant next argues that his counsel was ineffective when he failed to seek a curative instruction or mistrial, when, during trial, the prosecutor asked certain questions of the victim which indicated that the defendant elected not to talk to police. Defendant contends that these questions inferred he was guilty because he did not talk to police. He also contends that the questions were an indirect reference to his decision not to testify.
*553 The prosecutor asked the victim if the defendant could have told the police what happened on the night of the shooting if he chose to do so. The defense counsel objected to the line of questioning on the basis that the question was speculative and the trial judge sustained the objection. Thereafter, the line of questioning ceased.
As previously discussed in assignment of error number two, the reference to defendant's silence was indirect and was calculated to rebut defendant's assertion of self-defense, defense of others or defense of property, as asserted by defendant. The prosecutor's assertion was not calculated to infer defendant's guilt because of his silence. Under these circumstances, the line of questioning did not present a basis for admonition or mistrial. The State's argument was within the scope of rebuttal argument, as provided within LSA-C.Cr.P. art. 774. Defendant's argument does not establish deficient performance by defense counsel as required by Strickland.
Finally, defendant argues that he was given an excessive sentence and that his attorney's failure to file a motion for reconsideration of sentence precluded review of this issue on appeal.
The record reflects that, following imposition of the original sentence, defense counsel objected to the sentence and filed a written motion for reconsideration of sentence, which was denied by the trial court judge. A multiple bill was filed wherein it was alleged that defendant was a third-felony offender. Thereafter, defendant entered a negotiated plea to the multiple bill, wherein he admitted he was a second-felony offender and he received a stipulated sentence of ten years of imprisonment.
LSA-C.Cr.P. art. 881.2(A)(2) provides, in pertinent part, as follows: "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."
This Court addressed a similar situation in State v. Wilson, 00-1378 (La.App. 5 Cir. 6/27/01), 789 So.2d 766, 769-770:
It is further noted that defendant is precluded from challenging his habitual offender sentence, since it was agreed upon by the parties before defendant entered his admission to the habitual offender bill. Under LSA-C.Cr.P. art. 881.2A (2), a "defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This Court has applied these provisions to cases in which a defendant admits to the allegations in a habitual offender bill as part of a sentencing agreement.... Based on the foregoing, we find that this Court is left with nothing to review with respect to defendant's excessive sentence claim.
(Citations omitted). See also, State v. Bode, 01-953 (La.App. 5 Cir. 2/13/02), 811 So.2d 36.
Since defense counsel filed a motion for reconsideration concerning the original sentence and he was precluded from seeking review of the multiple offender sentence, his performance was reasonable, and not deficient. As such, his actions do not form the basis for a claim of ineffective assistance of counsel under Strickland.

ERROR PATENT DISCUSSION
Appellant requests, pursuant to La. C.C.P. art. 920, a review of the record for errors patent: any error discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 *554 Cir.1990). The review reveals one error patent in this case.
At the time of the imposition of the original sentence and the multiple bill sentence, the trial judge instructed the defendant that he had two years within which to file for post-conviction relief. The instruction was incomplete. Defendant has two years from the time his conviction and sentence becomes final to file for post-conviction relief. LSA-C.Cr.P. art. 930.8 A. State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062. As such, the district court judge is ordered to send the defendant notice in writing of this fact and to file a copy of the notification in the record.

CONCLUSION
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, Lee Steele, are hereby affirmed. The case is further remanded to the trial court with a instructions to inform defendant of the prescriptive period for seeking post-conviction relief as provided in La. C.Cr.P. art. 930.8.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defendant's motion for appeal was premature when it was filed after conviction and sentence, but before the sentence as a multiple offender. However, this procedural defect was cured by the subsequent re-sentence. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.