844 So.2d 135 (2003)
STATE of Louisiana
v.
Robert BOLTON.
No. 02-KA-1034.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 2003.
*137 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Terry M. Boudreaux, Alison Wallis, Assistant District Attorneys, Gretna, LA, for Appellee.
Frank J. Larre, Metairie, LA, for Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant, Robert Bolton, appeals his conviction and sentence for distribution of *138 marijuana. For the following reasons, we affirm and remand.[1]
The Jefferson Parish District Attorney filed a bill of information charging defendant, Robert Bolton, with distribution of marijuana, a violation of LSA-R.S. 40:966(A). The defendant pled not guilty at arraignment. On August 24, 2000, Bolton was tried before a jury of twelve persons, which found him guilty as charged. On October 20, 2000, after denying Bolton's motions for new trial and post-verdict judgment of acquittal, the trial judge sentenced him to ten years of imprisonment at hard labor. That day, Bolton also filed a filed a motion for appeal, which the trial judge granted.
The State filed a multiple offender bill of information alleging Bolton to be a third felony offender, allegations which he denied. A multiple offender hearing began on April 26, 2001, but the matter was held open. On July 19, 2001, the State amended the multiple bill to allege that Bolton was a second felony offender, which he admitted after being advised of his multiple offender rights. The trial judge accepted Bolton's admission, vacated the original sentence, and imposed an enhanced sentence of fifteen years of imprisonment at hard labor without benefit of probation or suspension of sentence.
On the night of September 3, 1999, Jefferson Parish Sheriff's Officers Kevin Guillot and Philip DeSalvo of the Street Crimes Division, were patrolling the Eastbank of Jefferson Parish. Deputy DeSalvo testified at trial that the Sheriff's Office had received numerous complaints of narcotics activity in the 200 block of Wilker Neal during the week. At approximately 10:00 p.m. Deputy DeSalvo was driving the unmarked white Crown Victoria down Wilker Neal Avenue when Deputy Guillot told Deputy DeSalvo that he had just seen some suspicious activity and to stop the car.
Deputy Guillot, an officer with eight years of law enforcement experience, testified that he saw a white truck that was parked on the side of the road facing them. As the officers drove past the truck, Deputy Guillot noticed a black male in the driver's seat of the truck and another black male, later identified as Bolton, standing in the open doorway of the passenger's side of the truck. As Deputy DeSalvo drove past the truck, Deputy Guillot made eye contact with Bolton. Deputy Guillot said that Bolton appeared startled, as if he were a "deer in a headlight." Deputy Guillot looked over his shoulder as they drove passed the truck and saw Bolton turn his body away from the officer's view. According to Deputy Guillot, Bolton was holding a brown bag with a clear bag protruding from the brown bag.
After driving past the truck, Deputy DeSalvo pulled on to the side of the road about 25 to 30 feet away from the white truck. The officers exited their vehicle and crept up to the white truck, with Deputy DeSalvo approaching the truck's driver's side and Deputy Guillot approaching the passenger's side where Bolton was standing. Deputy Guillot testified that *139 Bolton was leaning into the truck and the driver, later identified as Michael Shannon, was leaning toward Bolton. The interior of the truck was illuminated by the truck's dome light. As he approached the truck, Deputy Guillot looked through the truck's rear window and observed Bolton receiving money from Shannon while simultaneously passing a clear plastic bag containing green vegetable matter to Shannon. Believing that a hand-to-hand transaction was in progress, Deputy Guillot said, "Hey, what are you doing?" Bolton then grabbed the money from Shannon and tried to shove it into his pocket. Shannon was left holding the plastic bag, which he threw on the seat.
At that point, Deputy DeSalvo opened the driver's side door and removed Shannon from the truck. After patting down Shannon and Bolton, the officers returned to the truck and retrieved the bag Shannon had discarded upon the truck's seat. The matter in the bag was identified at trial by the State's expert as 12.3 grams of marijuana.
The officers found a brown paper bag containing a scale and small, empty plastic bag on the passenger's side of the truck. Deputy DeSalvo testified that the small bag was commonly known as a "dime bag" that is used for packaging marijuana. According to Deputy DeSalvo, scales such as the one found in the brown paper bag were commonly used to measure grams of marijuana. According to Deputy Guillot, Bolton had $40.00 in cash in his pocket.
Bolton was arrested for distribution of marijuana and Shannon was arrested for possession of marijuana, a charge to which Shannon later pled guilty. Michael Shannon testified on behalf of the defense that he and Bolton had known each other for about three years and "smoked the same drugs." According to Shannon, he had driven to Bolton's house that night and parked the truck on the street. He and Bolton shook hands, and then Bolton entered the truck. Shannon said that he and Bolton were planning to go to a night club, and Bolton asked if Shannon would bring him to fill a prescription before going out. Shannon said he saw the car pass by, but did not know its occupants were police officers until the officers showed up next to the truck. According to Shannon, the officers yelled, "Don't move." Shannon said he remained in the seat until one of the officers opened the door, grabbed him and placed handcuffs on him. The other officer, whom Shannon described as the "tall police officer," "grabbed" Bolton. Then, the officers searched the truck.
Shannon denied that he had attempted to purchase marijuana from Bolton. Instead, Shannon explained that he had purchased the bag of marijuana in the Fisher housing project before going to the defendant's house. Shannon also claimed ownership of the scale. Further, Shannon claimed that he planned to smoke the bag of marijuana with Bolton that night.
The defendant's wife, Theresa Bolton, testified that Bolton had a job and received a paycheck. Mrs. Bolton explained that it was not unusual for each of them to carry cash because the couple did not have a checking account. Mrs. Bolton admitted, however, that she did not know her husband's whereabouts at 10:00 p.m. on the night in question.
Bolton contends in his first assignment that the State's evidence presented at trial is legally insufficient to support his conviction because the State failed to prove beyond a reasonable doubt that he distributed marijuana to Michael Shannon. The State responds that it proved beyond a reasonable doubt that Bolton committed the offense.
*140 The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia.[2] According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[3] When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."[4] This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, supra.
The bill of information in the present case charges Bolton with distribution of marijuana, a violation of LSA-R.S. 40:966(A), which provides as follows:
A. Manufacture; distribution. Except as authorized by this Part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I;
In this assignment, Bolton claims the evidence was insufficient because the police officers' testimony did not prove beyond a reasonable doubt that he distributed marijuana to Shannon. Further, Bolton asserts that he should not have been found guilty, since Shannon claimed responsibility for the drugs. However, Deputy Guillot's testimony established that he saw Bolton in the process of exchanging a bag of marijuana for money with Michael Shannon. Also, the physical evidence supports the officer's version of the events. Deputy Guillot testified that when he first saw Bolton, he was holding a brown paper bag with a clear bag protruding, which he tried to conceal from view. A brown paper bag containing a scale and an empty plastic bag were seized from the passenger's side of the truck where Bolton was standing.
Although Shannon testified that he brought the marijuana to Bolton's house for their use that night, the jury obviously discounted that testimony. The jury heard this evidence, and in returning the guilty verdict, the jury obviously found Deputy Guillot's testimony to be more credible than Mr. Shannon's. Where there is conflicting testimony as to factual matters, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be re-weighed on appeal.[5] Viewing the evidence in the light most favorable to the prosecution, it appears that a rational trier of fact could have found beyond *141 a reasonable doubt that the defendant distributed marijuana. Accordingly, we find this assignment to be without merit.
In his second assignment, Bolton contends that the evidence should have been suppressed because police lacked reasonable suspicion for an investigatory stop and because he was arrested without probable cause. The State responds that the trial judge properly denied the motion to suppress because defendant was lawfully arrested.
An investigatory stop, authorized by LSA-C.Cr.P. art. 215.1 and Terry v. Ohio,[6] must be supported by reasonable suspicion of criminal activity. Reasonable suspicion is something less than probable cause to arrest. Rather, it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference.[7] An officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidents of crimes, are factors that may support reasonable suspicion for an investigatory stop.[8] The reputation of a neighborhood as a high-crime area is an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable suspicion for an investigatory stop.[9] The reviewing court must consider the totality of the circumstances, according deference to the inferences and deductions of a trained police officer that might elude an untrained person.[10] Applying these principles in the instant case, it appears that reasonable suspicion existed for an investigatory stop. The record reflects that the defendant was in the 200 block of Wilker Neal Avenue, an area about which the Sheriff's Office had received complaints of narcotics activity the week preceding September 3, 1999. Deputy Guillot, an experienced police officer of eight years, observed the defendant's startled expression and attempt to the conceal a brown paper bag as the officers passed in the unmarked car. According deference to Deputy Guillot's eight years of law enforcement experience, we find that the circumstances in this case, including Deputy Guillot's testimony that Bolton looked like a "deer in a headlight" when he saw the white Crown Victoria, the fact that defendant attempted to shield the brown paper bag he was holding in his hand from view, and Bolton's presence in a high crime area at night, provided reasonable suspicion of criminal activity for an investigatory stop.
Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable, trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime.[11] An officer may make a warrantless arrest when *142 the officer has probable cause to believe that the person to be arrested has committed an offense.[12] After witnessing Bolton conduct what the officer reasonably believed was a hand-to-hand narcotics transaction, we find that it appears Deputy Guillot had probable cause to arrest the defendant. Based on the foregoing, we find that trial judge properly denied the motion to suppress.
Bolton finally contends that his fifteen-year sentence as a second felony offender is constitutionally excessive because he was not proven to be a drug dealer at trial and because he was a hard working husband when he was arrested. The State responds that, based on LSA-C.Cr.P. art 881.2(A)(2), Bolton cannot appeal his sentence because it was imposed as part of a plea agreement. The State also responds that the sentence is not excessive, citing State v. Johnson.[13]
Under LSA-C.Cr.P. art. 881.2(A)(2), a "defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This prohibition encompasses sentences imposed pursuant to plea agreements setting forth specific sentences as well as plea agreements with sentencing caps.[14] This Court has applied these provisions to cases in which a defendant admits to the allegations in a habitual offender bill as part of a sentencing agreement.[15]
The record reflects that the State amended the multiple bill to allege that Bolton was a second felony offender instead of a third, and Bolton admitted that he was a second felony offender. However, the record does not reveal any agreement regarding the enhanced sentence. Rather, the trial judge merely advised Bolton that sentencing range as a second felony offender convicted of distribution of marijuana was between fifteen and sixty years of imprisonment. The only indication in the record that the sentence could have been part of an agreement between the State and Bolton is in the trial judge's remarks when sentencing Bolton:
THE COURT:
Mr. Bolton, in connection with your guilty plea, the Court is going to vacate the original sentence rendered in case number 99-6389, and resentence you to a period of fifteen years in the Custody of the Department of Corrections, without benefit of probation or suspension of sentence....
Conceivably, the court's remark that the sentence was in connection with the defendant's guilty plea, could indicate there was an agreement for sentencing. However, because such an agreement is not disclosed by the record, we find that Bolton is not precluded from challenging his sentence as constitutionally excessive.
The record does not reflect that Bolton made or filed a motion to reconsider his sentence pursuant to LSA-C.Cr.P. art. 881.1. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness.[16]
*143 Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness.[17]
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional.[18] In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case."[19]
When a trial court determines the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive.[20] However, the Johnson court cautioned that a trial judge's determination that a mandatory minimum sentence is excessive requires more than merely uttering the above-quoted phrases.[21]
Further, the trial court cannot impose whatever sentence it may feel is appropriate. Rather, the court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive.[22] However, "[a] sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Statute only under rare circumstances."[23]
As a second felony offender, Bolton was subject to a sentence of not less than onehalf the longest term and not more than twice the longest term for the underlying felony, which is distribution of marijuana. LSA-R.S. 15:529.1(A)(1)(a). At the time this offense was committed in 1999, distribution of marijuana was punishable by not less than five nor more than thirty years of imprisonment at hard labor, pursuant to LSA-R.S. 40:966(A). Thus, Bolton faced a sentencing range between fifteen and sixty years of imprisonment at hard labor. In the present case, the record reflects that the Bolton received the mandatory minimum sentence of fifteen years at hard labor.
As discussed above, mandatory minimum sentences under the habitual offender statute may be found to be unconstitutional as to a defendant if he meets the guidelines set out in State v. Johnson and State v. Lindsey, supra. However, Bolton does not even acknowledge on appeal that *144 he received the mandatory minimum sentence, nor does he suggest any reasons other than his guilt was questionable and that he was a "hard working husband" to indicate he is exceptional within the meaning of State v. Johnson, supra. Further, Bolton offered no evidence in the sentencing hearing to rebut the presumption of the constitutionality of the mandatory minimum fifteen-year sentence, nor does he provide support for his argument on appeal. Therefore, we find that Bolton has not met his burden of rebutting the presumption of constitutionality. Accordingly, there was no reason for the trial court to deviate from the mandatory minimum fifteen-year sentence.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[24] and State v. Weiland.[25] We note the following:
The record reflects that the trial court failed to completely advise Bolton of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8 in that he failed to indicate when the period began to run. We therefore remand this case to the district court and order it to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record.[26]
Bolton's motion for appeal was premature when it was filed after conviction and sentence on the offense but before he was adjudicated a multiple offender. However, that procedural defect was cured by the subsequent resentencing.[27]
For the foregoing reasons, the defendant's sentence and conviction are affirmed, and the case is remanded.
AFFIRMED; REMANDED.
NOTES
[1] This is the defendant's second appeal to this Court. Bolton's first appeal, 02-KA-114, was dismissed on September 24, 2002 because the appellate record did not reflect that the defendant was tried by a jury of twelve persons. The trial minutes and the jury poll results reflected that the defendant had been tried by a jury of eleven persons. And, the appellate record did not contain the transcript of the voir dire. Accordingly, this Court dismissed the case and remanded the matter to the district court so that the appellate record could be supplemented with the voir dire transcript. The present record, 02-KA-1034, contains the voir dire transcript, which reflects that a properly composed jury of twelve persons was selected to try the case.
[2] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[3] See also, State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1292-1293; State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.
[4] State v. Captville, 448 So.2d 676, 678 (La. 1984); State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
[5] State v. Richards, 97-1182 (La.App. 5 Cir. 4/15/98), 713 So.2d 514, 517, writ denied, 98-1452 (La.10/9/98), 726 So.2d 27.
[6] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),
[7] State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 70, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[8] State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 101-102.
[9] State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117.
[10] State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049; State v. Duckett, 99-314 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
[11] State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, 1331, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996).
[12] State v. Davis, 00-278 (La.App. 5 Cir. 8/29/00),768 So.2d 201, 212, writ denied, 00-2730 (La.8/31/01), 795 So.2d 1205; LSA-C.Cr.P. art. 213.
[13] 97-1906 (La.3/4/98), 709 So.2d 672.
[14] State v. Young, 96-0195 (La.10/15/96), 680 So.2d 1171; State v. Simmons, 00-161 (La. App. 5 Cir. 8/29/00), 767 So.2d 918, 921.
[15] See, State v. Wilson, 00-1378 (La.App. 5 Cir. 6/27/01), 789 So.2d 766, 769, and the cases cited therein.
[16] State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243.
[17] State v. Johnson, supra; State v. Dorthey, 623 So.2d 1276 (La.1993).
[18] State v. Johnson, 709 So.2d at 676; State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1093, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
[19] State v. Johnson, supra, at 676.
[20] State v. Dorthey, 623 So.2d at 1280.
[21] State v. Johnson, 709 So.2d at 676.
[22] State v. Johnson, 709 So.2d at 677.
[23] State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, 345.
[24] 312 So.2d 337 (La.1975).
[25] 556 So.2d 175 (La.App. 5 Cir.1990).
[26] State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1281.
[27] State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.