LOBRANO, Judge.
Defendants, Patricia and Doris Chiles “appeal” their December 15, 1988 convictions and sentences for violations of La. R.S. 37:1866 in April, 1986.
Code of Criminal Procedure Article 912.-1(B) and (C) provides that “... [a] defendant may appeal to the Court of Appeal from a judgment in a criminal case triable by a jury,... In all other cases not otherwise provided by law, the defendant has the right of judicial review by application to the court of appeal for a writ of review ...'"
Code of Criminal Procedure Article 779 provides:
“A. A defendant charged with a misdemeanor in which the punishment may be a fine in excess of five hundred dollars or imprisonment for more than six months shall be tried by a jury of six jurors, all of whom must concur to render a verdict.
B. The defendant charged with any other misdemeanor shall be tried by the court without a jury.”
In the instant case, defendants were charged and convicted of violating La.R.S. 37:1866 and were each sentenced to pay a fine of $100.00 and court costs.
La.R.S. 37:1864 provides:
“Every secondhand dealer as defined in this Part shall be required to maintain a book or ledger setting forth each purchase of secondhand or used merchandise when the value of any single piece of merchandise or article received shall be twenty-five dollars or more, for each single transaction. The price at which a piece of merchandise is offered for sale by a secondhand dealer shall be considered prima facie evidence of the value of the piece of merchandise. Each ledger entry shall be entered at the time of each transaction and shall contain an accurate description in the English language of the merchandise or article received including serial numbers of said objects, if distinguishable, along with the amount paid therefor.
The name, address, sex, race, height, weight, and driver’s license number of the person selling or delivering said merchandise or articles to the dealer shall be obtained and included with each ledger entry. Records of each purchase shall *47 be preserved for a period of at least three years.” (emphasis added)
La.R.S. 37:1866 provides:
“Every person licensed under the provisions of this Part shall make out and deliver to the superintendent of police of the city or town or to the sheriff of the parish in which he is doing business, every day before the hour of twelve o’clock noon, a legible and correct copy of the entries in the book mentioned in R.S. 37:1864 during the previous day. The name given by the person making the sale shall be furnished the superintendent of police or sheriff when they specially request it.” (emphasis added)
La.R.S. 37:1869 provides:
“Any secondhand dealer who violates, neglects, or refuses, to comply with any provision of this Part, shall, for the first offense, be fined no less than twenty-five dollars, nor more than one hundred dollars or be imprisoned for not less than ten days nor more than thirty days, or both. For the second and subsequent offenses he shall be fined five hundred dollars, or be imprisoned for not less than thirty days, nor more than sixty days, or both. If convicted three times his license shall be revoked and he shall not thereafter be permitted to engage in the business of secondhand dealer in the state of Louisiana.” (emphasis added)
Clearly defendants do not have a right of appeal. The maximum punishment to which they were exposed was a fine of $100.00 (first offense) and/or imprisonment for not more than thirty days. Ex Proprio Motu we deny jurisdiction over this appeal and shall treat this matter as an application for supervisory writs. State v. Banks, 444 So.2d 1243 (La.1984); State v. Chiles, 514 So.2d 150 (La.App. 4th Cir.1987), writ denied, 520 So.2d 748 (La.1988).
After a careful review of the record and arguments of counsel, we grant defendants’ writ application and reverse defendants’ convictions and sentences.
Patricia Chiles testified that in 1984 and 1985 the St. Bernard Sheriffs Office established a procedure whereby sheriffs office personnel would pick up the daily ledger sheets kept by defendants’ pawn shop, the D.I.K. Buy and Sell Shop, located in St. Bernard Parish. These ledger sheets were completed and provided to the Sheriff’s office in compliance with the mandate of La.R.S. 37:1864 and 1866.
Sandra Schlink, an employee of the Sheriff’s office from 1984-1985, corroborated Chiles’ testimony. Schlink stated that she would collect the ledger sheets approximately “once per week”. Both Chiles and Schlink further testified that in late 1985 the Sheriff’s office changed the procedure. Sheriff’s office personnel would deliver index cards to the shop. Defendants were instructed to complete the cards with the pertinent information of each day’s purchases. The cards were picked up by the Sheriff’s office approximately once per week.
Chiles testified that problems arose with this procedure, one of which was the inability to complete the cards on a timely basis for failure of the Sheriff’s office to provide a sufficient supply of cards. Chiles testified that she made numerous phone calls and wrote several letters in an attempt to resolve the problems. Her attempts were to no avail. She testified that the only response she received was a comment by Lt. David to the effect that if she didn’t like the procedure she could return to Michigan. Similarly, she testified that when she informed Sergeant Leslie Raybon, head of the pawn shop division, that she wanted to deliver the ledger sheets each day because she was not being provided sufficient cards, he refused her offer stating that the ledger sheets were too time consuming and that she either comply with the card procedure or go to jail.[1]
*48 Chiles further testified that Raybon told her to mail the cards to the Sheriffs office. She complied with his instructions and mailed the cards several times per week. No complaints were received by defendants concerning the frequency of the mailings until 1986 when Raybon and Judge Thomas McBride visited the shop.[2] During that visit, Raybon informed defendants that the cards were being lost in the “radio room” (part of the Sheriffs office) and that defendants were to mail them “more often”. Raybon, however, never explained what he meant by “more often”. In response, Chiles testified that she began mailing the cards every other day instead of three times per week as she had been doing.
Chiles testified that following her failed attempt to resolve the problems with the Sheriffs office, some of which involved the card procedure, she wrote letters of complaint to the District Attorney’s office in Baton Rouge and to the Attorney General’s office on April 8, 1986 and April 12, 1986, respectively.
Sergeant Raybon testified that he told defendants in March of 1986 that they were required to keep a ledger in accordance with the law and that the Sheriff’s office was to be provided with copies of the daily ledger sheets. While Raybon corroborated Chiles’ testimony that he told defendants they could mail the sheets and later the cards, he insisted he told them to do so on a daily basis believing the cards would arrive within twenty-four hours. This testimony contradicts that of Chiles and Schlink who testified that the sheets and the cards were picked up “once per week”. Raybon testified that the only complaint he had with the card procedure was receiving several days cards in one envelope. His testimony is unclear as to whether he voiced this concern to defendants.
Nine days after Chiles sent her letter of complaint to the Attorney General’s office, the Sheriff’s office initiated an undercover investigation of defendants’ shop. On April 21, 1986, undercover agent, Gina Bar-ras, sold a gun to defendants for $15.00. Pursuant to this sale, Barras, at defendants request, completed the personal history portion of the index card using her false identity. The transaction information was apparently completed by defendants. The next day, April 22, 1986, Barras returned and sold two more guns to defendants. Again she completed the personal history portion of the index card (using her false identity) provided by defendants.
Steven Collara, expert witness, valued the first gun at $95 — $100.00, the second gun at $95 — $125.00 and the third gun at $45 — $50.00. The index card for the April 21st transaction was received in the Sheriff’s office April 26th. The cards for the transaction of April 22nd were received in the Sheriff’s office April 28th. Defendants were subsequently arrested and charged with violations of La.R.S. 37:1866.
Chiles testified that following her arrest she began bringing in the ledger every day to the Sheriff’s office. She stated she was made to wait at least an hour before anyone would agree to take the ledger. Chiles testified that on one occasion she told Sheriff’s office personnel that “If you don’t want to accept it I will do something different.”
Defendants assert the following assignments of error:
1) It was error to extend the coverage of La.R.S. 37:1866 to a situation in which ledger sheet compliance was waived and instructed not to be done, and the vague, substituted non-statutory compliance was not satisfactory to the person charged with enforcing the law.
2) When the police authority, for its own convenience, instructs a second hand dealer to deviate from a statutorily mandated procedure, as a matter of public policy and statute, it is error to extend the statute by analogy to provide authority for conviction of a violation not therein specifically provided.
*49 3) Judge Gorbaty should have recused himself in this close and hotly contested case. Adopting argument in K-9046.
ASSIGNMENTS OF ERROR 1 AND 2:
First, we disagree with defendants assertion that the Sheriffs office charged them with a new crime. Defendants were charged with and subsequently convicted of failing to “... make out and deliver to the sheriff of this parish a legible and correct copy of the entries of their record book for the previous day in violation of 1950 La.R.S. 37:1866.” As is evident from the language of the bill of information, defendants were charged with violating the legislatively mandated requirements of R.S. 37:1866.
We do, however, agree with defendants’ assertion that the admitted action of the Sheriff and his office make it unfair and impermissible to prosecute or convict under the strict terms of the statute. See, Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959).
La. R.S. 37:1864 clearly provides that every secondhand dealer must maintain a ledger setting forth each purchase of used merchandise when the value of the merchandise exceeds $25.00. La.R.S. 37:1866 provides that the secondhand dealer must deliver “... to the Sheriff of the parish in which he is doing business, every day before the hour of twelve o’clock noon, a legible and correct copy of the entries in the book mentioned in R.S. 37:1864 during the previous day.”
In contravention of this clear legislative mandate, the Sheriff’s office instituted its own procedure whereby index cards would be provided to the defendants and completed by them in lieu of the ledger sheets. Defendants’ reliance on this procedure was reasonable and should not be used against them in violation of their due process rights. See, United States v. Pennsylvania Industrial Chemical Corp., 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973). The actions of the Sheriff’s office constituted an “indefensible sort of entrapment.” See, Raley, supra.
Entrapment, as a defense, is set forth in State v. Batiste, 363 So.2d 639, 641 (La.1978):
“Under the generally accepted view an entrapment is perpetrated when a law •enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting such an offense when he is not then otherwise disposed to do so.”
Entrapment is an affirmative defense and the burden is on the defendant to prove entrapment by a preponderance of the evidence. State v. Brand, 520 So.2d 114 (La.1988). Entrapment focuses on the predisposition of the defendant to commit the crime as well as the conduct of the police. State v. Richards, 426 So.2d 1314 (La.1982).
The defense of entrapment is designed to deter police from planting ideas in innocent minds and thereby promote crimes which would not otherwise be committed. State v. Brand, supra.
The testimony and evidence presented at trial establishes that the Sheriff never required defendants to bring the purchase information in by noon the day following the sale. In fact, the testimony of Chiles which was corroborated by Schlink was to the effect that the accepted procedure for the delivery of the sheets, as well as the cards, was to pick them up “once per week” by Sheriff’s office personnel. Ray-bon admitted that he allowed defendants to mail the sheets and the cards to the Sheriff’s office. Upon cross-examination, he stated that he only allowed the cards to be mailed because it was his belief that if mailed within the same zip code area, the cards would be delivered within a “twenty-four” hour period. Even if Raybon’s reason is correct, the procedure of mailing the cards would not fulfill the twelve o’clock requirement. Cards mailed at the close of defendants business hours would, theoretically, not reach the Sheriff until the close of business hours the following day. Thus, it is evident that defendants’ reliance *50 upon the procedure and instructions of the Sheriffs office could only result in defendants’ deviation from the statutory requirements.
It is further evident that this procedure was for the convenience of the Sheriff’s office, not that of the defendants. Defendants attempted to resolve the problems but were thwarted by the Sheriff’s office personnel. There is no showing that defendants had any predisposition to violate the statutory requirements.
We conclude that the evidence is insufficient to prove intent (general criminal intent) to violate La.R.S. 37:1864. Therefore, defendants’ convictions and sentences are reversed.
REVERSED.

. The testimony indicates that initially the Sheriffs office picked up the ledger sheets and transferred the information onto index cards which they kept on file. This was a time consuming procedure which often took hours. In order to save time, the Sheriffs office changed the procedure so that the cards were completed by the dealers, thus eliminating one step in the administrative responsibility of the Sheriffs office.

. Judge McBride was present for the purpose of looking for a string of pearls which were stolen during a burglary of his home.