J^SUSAN M. CHEHARDY, Judge.
On April 23, 2002, the Jefferson Parish District Attorney’s Office filed a bill of information charging the defendant, Kinley Rogers, with distribution of cocaine, a violation of La. R.S. 40:967(A). The defendant pled not guilty at arraignment. After a one-day trial, a 12-person jury found the defendant guilty as charged on August 27, 2002.
On September 19, 2002, the trial judge sentenced the defendant to 10 years of imprisonment at hard labor. Immediately thereafter, the State filed a multiple offender bill of information alleging defendant is a third felony offender with prior convictions for distribution of cocaine and possession of cocaine. After being advised of his rights, defendant admitted the allegations of the multiple bill.[1] Thereafter, the trial judge vacated the original sentence and sentenced defendant to 20 years at hard labor in conformity with the agreement between the State and the defendant.[2] That same day, defendant filed a motion for appeal, which the trial judge granted. On October 7, 2002, defendant filed a motion to reconsider sentence, which the trial judge subsequently denied.
| ¡Facts
On February 22, 2001, Detective William Sandino of the Kenner Police Department was working undercover attempting to purchase narcotics in areas of Kenner about which the police department had received complaints. Detective Sandino was driving a vehicle equipped with audio and video recording devices.
Detective Sandino was driving west on 31st Street when he saw the defendant walking along the street. Detective Sandi-no stopped his vehicle near the defendant, rolled down the window, and asked defendant where he could get “two twenties.” According to Detective Sandino, “two twenties” is street slang for two $20.00 rocks of crack cocaine. Defendant instructed Detective Sandino to drive around the corner. After Detective Sandino rounded the corner, defendant entered the passenger’s side of Detective Sandino’s vehicle and gave Detective Sandino directions to a house on Lexington Avenue.
After the defendant told the detective to pull over, the detective gave him $40 to buy crack cocaine. Defendant gave Detective Sandino a crack pipe to hold as “collateral.” The defendant then exited the car and told Detective Sandino to drive around the block. After Detective Sandino re *841 turned, the defendant approached the driver’s side of the car, leaned in and spit two off-white rock-like objects into the detective’s car. The videotaped and audiotaped recordings of these events were entered into evidence and were played for the jury at trial.
After the transaction, Detective Sandino met with his sergeant and turned over the off-white rock-like objects, the tapes and the crack pipe. Detective Sandino testified that he field-tested the off-white rock-like objects, which tested positive for cocaine. According to Charles Krone of the Jefferson Parish Crime Lab, who was accepted as an expert forensic scientist at trial, the off-white rock^ike4 objects, which tested positive for the presence of cocaine, weighed .3 grams in total weight.
Detective Sandino testified that he prepared a warrant for defendant’s arrest, and defendant was subsequently arrested on the outstanding warrant by another police officer. At trial, Detective Sandino positively identified defendant as the person who sold him crack cocaine.
At trial, defendant testified that he was a crack addict and that he had convictions for distribution of cocaine and possession of cocaine. On direct examination, defendant stated that he sold Detective Sandino the cocaine because he wanted a “hit” of crack. On cross-examination, however, he denied that he sold any drugs to Detective Sandino.
Defendant admitted that he told the officer to drive around the corner after Detective Sandino approached him and that he rode in his car. Defendant testified that he did not sell drugs. He said that he ultimately kept Detective Sandino’s money, threw his own crack pipe into Sandino’s vehicle, and told Sandino to “get out [his-jface.”
Defendant explained that he knew that Detective Sandino was a police officer because they had attended school together. Defendant did not know, however, know that Sandino was working undercover that day. Defendant further stated that the police officers in the neighborhood frequently harassed him. According to the defendant, the police had been trying to “throw [him] away” for some time.
After hearing the testimony and reviewing the evidence, the jury found defendant guilty as charged of distribution of cocaine. This appeal follows.
In his first assignment of error, defendant argues that the evidence was insufficient to support his conviction “when the defendant showed by a preponderance of the evidence that he was entrapped into participating in this | ^alleged drug transaction, and proof beyond a reasonable doubt was not established.”[3] Defendant contends the evidence was insufficient because Detective Sandino’s testimony contained contradictions and inconsistencies. He further contends that “there was no credible proof that a distribution involving Mr. Rogers even occurred.” Finally, he contends that his conviction is wrongful because he established an entrapment defense. The State responds that the evidence was sufficient to support defendant’s conviction and that defendant failed to meet his burden of proving entrapment.
The constitutional standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) requires that a conviction be based on proof sufficient for any rational trier of fact, viewing all of the evidence in the light most favor *842 able to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. See, State v. Bishop, 01-2548, p. 4 (La.1/14/03), 835 So.2d 434, 437.
The defendant was convicted of violating LSA-R.S. 40:967(A), distribution of cocaine. Pursuant to that statute, the State was' required to prove that defendant knowingly or intentionally distributed cocaine. See, State v. Raines, 00-1941, p. 7 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 640, unit denied, 01-1906 (La.5/10/02), 815 So.2d 833.
In support of his contention that Detective Sandino’s testimony was unreliable, defendant points to discrepancies between the officer’s testimony, the police report and the arrest warrant affidavit prepared by the officer. At trial, Detective Sandino acknowledged that the police report stated that defendant gave him one off-white object when he testified that defendant gave him two objects. Additionally, Detective Sandino admitted that he stated in the affidavit that the ^defendant flagged him down, although Sandino testified he pulled up next to the defendant as he walked down the street.
Detective Sandino acknowledged that there were errors in the documents. Detective Sandino explained that he handled over 300 narcotics cases annually and stated that “cut and paste” errors sometimes occur in the documents.[4] Detective Sandi-no testified that he would never intentionally mislead a judge by placing false information in an affidavit.
The jury also heard the defendant’s account of the events. His testimony internally conflicted in that he initially admitted on direct examination to selling crack cocaine to Detective Sandino, but, on cross examination, denied that he did so. On cross-examination, defendant insisted that he only handed the officer a crack pipe, not crack cocaine, when the officer returned from driving around the block.
In addition to contradictions within his testimony, the taped recordings of the events contradict defendant’s version of the events. Even though the sound on the audio and video tapes is somewhat distorted, the recordings reflect that Detective Sandino asked the defendant, in street jargon, whether he had two rocks of crack cocaine. Shortly thereafter, defendant entered the passenger’s side of the officer’s car and directed the officer to drive to a specific location. A few minutes later, defendant told the officer to pull over, and defendant exited the car. The defendant then told the officer to drive around the bock. As Sandino drove away, the audio tape reflects that he remarked that the defendant had left his crack pipe as “collateral.”
|7When Detective Sandino returned to where he had dropped off the defendant, the defendant approached the driver’s side of the officer’s car. The audio tape reflects that the defendant told the officer to “open [his] hand.” Once the transaction was concluded, Detective Sandino drove away. Detective Sandino states on the audiotape that the defendant took crack cocaine from his mouth and gave it to Detective Sandino. Further, defendant let him keep the crack pipe.
In reaching the guilty verdict, the jury obviously credited the State’s evidence, including Detective Sandino’s testimony, in *843 stead of the defendant’s testimony. In State v. Deruise, 98-0541, p. 26 (La.4/3/01), 802 So.2d 1224, 1243, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), the Louisiana Supreme Court reiterated that “[t]he trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any ■witness.” It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Hotoph, 99-243, p. 12 (La.App. 5 Cir.11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. Under the circumstances, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant was guilty of distribution of cocaine.
Defendant also contends that he was entrapped into committing the offense. Entrapment is a defense that arises when a law enforcement official or a person acting in cooperation with such an official for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces the person to engage in conduct constituting the offense when that person is not otherwise disposed to do so. State v. Brand, 520 So.2d 114, 117 (La.1988); State v. Petta, 98-745, pp. 7-8 (La.App. 5 Cir. 2/10/99), 729 So.2d 29, 32, writ denied, 99-0692 (La.9/3/99), 747 So.2d 533, cert. denied, 528 U.S. 1125, 120 S.Ct. 956, 145 L.Ed.2d 830 (2000).
|sThe entrapment defense is composed of two elements, which are (1) an inducement by a state agent to commit an offense, and (2) the lack of defendant’s predisposition to commit the offense. The defendant has the burden of proving by a preponderance of evidence that a state agent induced him to commit a crime. Once the defendant meets this burden, the State has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement. State v. Lewis, 01-1084, p. 6 (La.App. 5 Cir. 3/13/02), 815 So.2d 166, 171, writ denied, 02-1053 (La.11/15/02), 829 So.2d 424.
It is not entrapment, however, if the officers or agents have merely furnished a defendant who is predisposed to commit the crime the opportunities to do so. As stated by the Louisiana Supreme Court, “In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.” State v. Brand, 520 So.2d at 116; State v. Petta, supra.
On appeal, contentions of entrapment are reviewed according to the constitutional standard set out in Jackson v. Virginia, supra; State v. Petta, 729 So.2d at 32. The first inquiry is whether defendant proved by a preponderance of the evidence that he was induced to commit the crime. If so, the next inquiry is whether the State adduced evidence of the defendant’s predisposition to commit the crime such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant’s predisposition to commit the crime, rather than the State’s inducement that caused the defendant’s conduct. State v. Petta, supra.
In the present case, we find that the defendant failed to establish that Detective Sandino induced him to distribute cocaine. At trial, defendant testified that the reason he sold the cocaine was because Detective Sandino “laid there and came for me and I wanted me a hit.” Further, there is considerable evidence that the defendant was predisposed to sell cocaine. The defendant’s predisposition was Ralso demon *844 strated by the fact that defendant willingly entered the officer’s car, accepted the officer’s money, directed him to a specific location, and returned with crack cocaine shortly thereafter.
Defendant argues that his case is similar to Jacobson v. U.S., 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), in which the United States Supreme Court concluded that the defendant was entrapped into committing the charged offense. In Jacobson, the government made repeated efforts over a period of two and one-half years to explore the defendant’s willingness to order sexually explicit photographs of children through the mail. Jacobson, 503 U.S. at 544, 112 S.Ct. at 1538.
Ultimately, the defendant ordered a catalog depicting child pornography from a fictitious company created by a governmental agency. Since the prosecution conceded the defendant had been induced, the focus was on the defendant’s predisposition to commit the crime. The Jacobson court concluded that the prosecution had failed to prove beyond a reasonable doubt that the defendant was independently predisposed to commit the charged offense. Jacobson, 503 U.S. at 549-553, 112 S.Ct. at 1541-1543.
The Jacobson court commented on undercover narcotics operations:
Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate “sting” operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant’s predisposition. See United States v. Sherman, 200 F.2d 880, 882 (1952).
U503 U.S. at 549-550, 112 S.Ct. at 1541.
We find that the Jacobson court’s comment accurately describes the situation at hand. Rather than inducing defendant, the evidence indicates that Detective San-dino furnished an opportunity for the defendant to distribute crack cocaine. In contrast to Jacobson, it appears that it was the defendant’s own predisposition caused him to readily commit the present offense. Further, defendant, not Detective Sandino, directed the sequence of the events leading up to the drug transaction, unlike Jacobson, who was repeatedly approached by the government..
Based on the foregoing, we conclude that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt, that the defendant’s predisposition, independent of the State’s actions, caused him to distribute cocaine and, thus, rejected his defense of entrapment.
In his second assignment of error, defendant argues that the Trial Court erred by imposing an unconstitutionally excessive sentence. Defendant contends that his 20-year sentence as a third felony offender is excessive and was imposed with inadequate reasons. According to La. C.Cr.P. art. 881.2(A)(2), a “defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.” This Court has applied this provision when a defendant is sentenced pursuant to a sentencing agreement made in exchange for a stipulation to a multiple offender bill. See, State v. Miller, 02-729, p. 7 (La.App. 5 Cir. 12/30/02), 836 So.2d 614; State v. Steele, 01-1414, pp. 19-20 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 553; State v. Wilson, 00-1378, p. 7 (La.App. 5 Cir. 6/27/01), 789 So.2d 766, 769-789; State v. Stanley, 98-920, p. 10 *845 (La.App. 5 Cir. 2/10/99), 729 So.2d 33, 37, writ denied, 99-0614 (La.6/25/99), 745 So.2d 1186; State v. Francis, 98-811, p. 8 (La.App. 5 Cir.1/26/99), 727 So.2d 1235, 1240, writ denied, 99-0671 (La.6/25/99), 746 So.2d 597.
In the present case, when the defendant stipulated to the habitual offender bill of information, he signed and initialed a form entitled “WAIVER OF RIGHTS-PLEA OF GUILTY MULTIPLE OFFENDER — LA R.S. 15:529.1.” This form provides the sentencing range defendant faced, 20 to 60 years of imprisonment at hard labor and specifies the sentence defendant would receive, 20 years imprisonment, if he “pled guilty” to the habitual offender bill. Furthermore, the colloquy before the stipulation between the trial judge and the defendant clearly indicates that the defendant knew that his stipulation would result in a sentence of 20 years. Defendant is precluded, therefore, from challenging the habitual offender sentence because this sentence was imposed in conformity with an agreement between the State and the defendant set forth in the record before he stipulated to the habitual offender bill.
Finally, the record was reviewed for errors patent according to La. C.Cr.P. art. 920. We note that the trial judge failed to completely advise the defendant of the prescriptive period for filing post-conviction relief in accordance with La.C.Cr.P. art. 930.8 because the judge failed to specify when the relevant period began to run.[5] We remand, therefore, for the trial court to send appropriate written notice to defendant of prescriptive period for post-conviction relief, and to file written proof in the record that defendant received the notice within ten days of the rendering of the opinion. State v. Newman, 01-1066, p. 11 (La.App. 5 Cir. 4/10/02), 817 So.2d 180, 186.
Further, we note that the trial judge failed to stipulate that defendant’s enhanced sentence would be without benefit of probation or suspension of sentence |12as required by La. R.S. 15:529.1(G). Pursuant to La. R.S. 15:301.1, the sentence is deemed to contain these restrictions. See, State v. Segura, 02-280, pp. 11-12 (La.App. 5 Cir. 9/30/02), 829 So.2d 587, 592, writ denied, 02-2696 (La.3/28/03), 840 So.2d 569. Accordingly, no corrective action is needed.

AFFIRMED; REMANDED FOR COMPLIANCE WITH LA. C.CR.P. ART. 930.8.

. In connection with the stipulation, defendant acknowledged that he understood that he would receive, as a third felony offender, a sentence of 20 years imprisonment.

. The September 19, 2002 transcript reflects that the defendant also pled guilty to simple burglary, which was not related to this case.

. In his brief, defendant addressed the issue of entrapment before addressing the sufficiency of the evidence. Because entrapment is an affirmative defense, we will address the sufficiency of the evidence before discussing the entrapment defense.

. He testified that, because of the demands of his job, he frequently completed his paperwork late at night or early in the morning. Further, when asked to explain "cut and paste errors,” he testified that, in order to save time doing his paperwork on his computer, he frequently uses an "old” document as a template and fills in the information from the new case to create a new document.

. Although the commitment/minute entry indicates that the trial judge accurately informed defendant of this time period, the transcript does not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Parker, 01-0958, p. 8 (La.App. 5 Cir. 2/13/02), 812 So.2d 86, 91, writ denied, 02-1058 (La.2/21/03), 837 So.2d 624.