**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1580

STATE OF LOUISIANA

VERSUS

SHEDRICK DEWAYNE ROSS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN, NO. CR-04-4194
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy H. Ezell, and J. David Painter, Judges.

**AFFIRMED.**

Sherron Ashworth
Assistant District Attorney
P.O. Box 839
Oberlin, LA 70655
Counsel for State of Louisiana

Mark O. Foster
Louisiana Appellate Project
P.O. Box 2057
Natchitoches, LA 71457-2057
Counsel for Defendant-Appellant:
    Shedrick Dewayne Ross

**PAINTER, Judge.**

Following a jury trial, Defendant, Shedrick Dewayne Ross, was found guilty of distribution of cocaine, a violation of La.R.S. 40:967(A)(1). After the State dismissed a habitual offender charge, the trial court sentenced Defendant to twelve years at hard labor, the first two without benefit of parole, probation, or suspension of sentence. Defendant appeals his conviction, asserting that the evidence was insufficient to support the conviction in light of evidence of entrapment. Finding no merit to the entrapment defense, we affirm Defendant's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2004, Louisiana State Trooper Brett Travis was conducting an undercover drug investigation in Elton, Louisiana. Working with an informant, Trooper Travis visited the residence of Lawrence Soileau and attempted to buy crack cocaine. Soileau advised them that he did not have any crack, but as they were about to leave, he told them, "I can call my boy." Soileau made a phone call and asked Trooper Travis and the informant to come into the house and wait. Defendant arrived and sold a "rock" of crack to the informant, who then handed the rock to Trooper Travis. Trooper Travis and the informant soon left.

The undercover operation included the use of audio and visual recording equipment; however, the video camera was set up outside Soileau's residence. The audio failed to record events inside. Subsequent testing of the substance sold by Defendant confirmed that it was cocaine.

On October 15, 2004, the Allen Parish District Attorney's Office filed a bill of information charging Defendant with distribution of cocaine, a violation of La.R.S. 40:967(A)(1). On May 16, 2005, a jury was selected and sworn. On May 17, the jury heard evidence and found Defendant guilty as charged.

1

On July 19, the court re-convened. The State dismissed a habitual offender charge against Defendant, and the court proceeded to sentencing on the original conviction. Defendant was then sentenced to twelve years at hard labor, the first two without benefit of parole, probation, or suspension of sentence.

Defendant now appeals his conviction, assigning as error that the evidence was insufficient to support the conviction in light of evidence of entrapment. For the following reasons, the conviction is affirmed.

## DISCUSSION

*Errors Patent*:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

*Sufficiency of the Evidence*:

In his lone assignment of error, Defendant argues that the evidence was insufficient to support the conviction, because it did not rebut his defense of entrapment. Defendant does not dispute that the State proved the elements of the crime beyond a reasonable doubt.

In addition to some general cases on the right to present a defense, Defendant cites *State v. Iron*, 00-1238, pp. 6-9 (La.App. 3 Cir. 2/14/01), 780 So.2d 1123, 1126-28, *writ denied*, 01-1232 (La. 3/15/02), 811 So.2d 898 (footnote omitted) (emphasis added) (alteration in original), which explained:

> The Defendant argues that his verdict should be vacated because he was entrapped. In support of his argument, the Defendant maintains that he was not involved in any type of illegal activity prior to being approached by Ms. Hampton, that he did not flag her down or attempt to sell her anything and that he initially did not want to sell to Ms. Hampton.

2

As stated by this court in *State v. Caldwell*, 616 So.2d 713, 719 (La.App. 3 Cir.), *writ granted in part, denied in part,* 620 So.2d 859 (La.1993):

>       Entrapment is a defense which arises when a law enforcement official or an undercover agent, acting in cooperation with such an official for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. *State v. Brand*, 520 So.2d 114, 117 (La.1988); and *State v. Bernard*, 441 So.2d 817, 820 (La.App. 3 Cir.1983), *writ denied*, 445 So.2d 439 (La.1984). *Rather than negating an essential element of the crime, the entrapment defense establishes exculpatory circumstances that defeat culpability in spite of the fact that the prosecution has proved all of the essential elements of the crime* beyond a reasonable doubt. *State v. Brand*, 520 So.2d 114 (La.1988). As the court noted in *Brand*, the burden is on the defendant to prove entrapment by a preponderance of the evidence. *Id.* at 117.

In *State v. Brand*, 520 So.2d 114, 117 (La.1988), the court questioned whether the proved criminal conduct was caused by the inducement "of an innocent person into committing the crime or by defendant's readiness and willingness to do so without persuasion. *State v. Batiste, supra* [363 So.2d 639 (La.1978) ]."

In *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), the United States Supreme Court held that "[w]here the Government has induced an individual to break the law and the defense of entrapment is at issue . . ., the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Id.* at 548-49, 112 S.Ct. at 1540. Also, "[a]n entrapment defense will not lie if the officers or agents merely furnished a defendant who is predisposed to commit the crime the opportunity to do so." *State v. Moody*, 393 So.2d 1212 (La.1981); *State v. Prudhomme*, 532 So.2d 234, 240 (La.App. 3 Cir.1988), *writ denied*, 541 So.2d 871 (La.1989).

In this case, Deputy Perkins testified that he did not instruct Ms. Hampton to buy from a specific person. Ms. Hampton testified that she was "turning blocks" and riding around when she encountered the Defendant. She stated that she knew the Defendant prior to that day and had known him for a long time. She explained that as she was traveling down Garner Street, the Defendant was riding a bicycle down Lock Street. They met up at the corner of Garner and Lock Streets. According to Ms. Hampton, the Defendant saw her and turned on to Garner Street and she drove up to him. Ms. Hampton stated that the Defendant stopped his bike and she asked him if he had a "thirty"; the

Defendant replied in the affirmative. She explained that they conversed a moment, at which time he asked her to go to his apartment to buy drugs. Next, the Defendant proceeded to untie a plastic bag containing crack cocaine, broke off a rock and sold it to Ms. Hampton for $40.

The record supports the contention that the Defendant was not induced to sell crack cocaine. Although Ms. Hampton initiated contact with the Defendant, the record and videotapes of the transaction do not portray acts of persuasion on the part of Ms. Hampton to get Defendant to sell crack cocaine to her. On the contrary, the record reflects the Defendant's readiness and willingness to sell crack cocaine to Ms. Hampton. He expressed his preference to sell from his home to avoid publicity and encouraged her to return to him for future purchases.

To demonstrate the Defendant's predisposition to sell cocaine, Charles Guillory, the Defendant's probation officer, testified that he was currently supervising the Defendant in connection with a guilty plea to possession of cocaine in East Baton Rouge Parish. Mr. Guillory stated that the bill of information charged the Defendant with possession of cocaine.

The trier of fact could have found that the defense of entrapment was not established. *The evidence supports the notion that the Defendant was predisposed to sell drugs as evinced by his willingness to provide drugs to Ms. Hampton and because he had an available supply on his person.* Also, the testimony of Ms. Hampton and the video tapes of the transaction indicate that the Defendant was not badgered or coerced by Ms. Hampton to commit a crime which he would not otherwise commit. Ms. Hampton merely provided the Defendant with an opportunity to commit a crime *which he was ready, willing and able to commit*. For these reasons, the jury's conclusion that the Defendant was predisposed to commit the crime and was not entrapped will not be disturbed.

We also note the following discussion by the fifth circuit in *State v. Bates*,

03-352, pp. 5-6 (La.App. 5 Cir. 7/29/03), 853 So.2d 71, 74-75, *writ denied*, 03-2565

(La. 2/6/04), 865 So.2d 740 (emphasis added):

[i]t is not entrapment if the officers or agents have merely furnished a defendant who is predisposed to commit the crime the opportunities to do so. As stated by the Louisiana Supreme Court, "In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *State v. Brand*, 520 So.2d at 116; *Accord, State v. Petta, supra*.

The first inquiry is whether defendant proved by a preponderance of the evidence that he was induced to commit the crime. If so, the next inquiry is whether the State adduced evidence of the defendant's

4

predisposition to commit the crime such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant's predisposition to commit the crime, rather than the State's inducement that caused the defendant's conduct. *State v. Petta, supra*.

Addressing an entrapment defense in *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), the United States Supreme Court commented on undercover narcotics operations:

> Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate "sting" operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use *because the ready commission of the criminal act amply demonstrates* the defendant's predisposition. *See United States v. Sherman*, 200 F.2d 880, 882 (C.A.2 1952).

*Jacobson*, 503 U.S. at 549-550, 112 S.Ct. at 1541.

The record reflects that rather than inducing defendant[,] Agent Carter merely furnished defendant the opportunity to distribute crack cocaine. Agent Carter testified that she had never met Turner or defendant before the day of the offense. Agent Carter further testified that she had never spoken to defendant until he approached her vehicle. Additionally, defendant, not Agent Carter, directed the sequence of the events leading up to the drug transaction. After Agent Carter made known her desire to purchase cocaine, she simply waited until the defendant brought the cocaine to her vehicle. *Defendant's willingness to commit commission of the crime demonstrates his predisposition to do so.*

Furthermore, Trooper Travis summarized the most pertinent events in his

testimony:

Q.    And at any point, did you ever go into Mr. Soileau's residence?

A.    Yes, sir. After the phone call was made, we were actually going to just come back later, but, he said he would be here in just a minute. So, Lawrence Soileau actually asked us just to come inside the house.

Q.    Okay. Who was already inside the residence at that time?

A.    Myself, (sic) the inform[ant], . . ., and Lawrence Soileau.

Q.    Okay. Was there anyone else inside the residence at that time?

5

A.     No, sir.

Q.     Okay.  After the phone call was made that you previously testified to, did Shedrick Ross arrive at that location?

A.     Yes, sir.

Q      Okay.  And whenever he arrived at that location, did he stay outside or did he come on in the house?

A.     No, sir.  He walked straight in the house.

Q.     Okay.  And did Shedrick Ross sell anyone cocaine after he arrived?

A.     Yes, sir.

Q.     Okay.  To whom did he sell that?

A.     To the informant, [name omitted].

Q.     Okay.  And where did that take place?

A.     Just inside the kitchen area.

Q.     Okay.  Were you physically present when this happened?

A.     Yes, sir.

Q.     You saw the transaction?

A.     Yes, sir.

In addition, the undercover videotape shows that Soileau's phone call to obtain the crack ended approximately one minute and forty-four seconds into the recording. Soileau, Trooper Travis, and the informant entered Soileau's house approximately two minutes and fifty-five seconds into the tape.  Defendant showed up approximately three minutes and thirty seconds into the recording.  The whole group left the house at four minutes and sixteen seconds into the tape.  Given the facts and the circumstances and actions shown on the tape, the jury could reasonably have inferred that Defendant was the individual Soileau called to supply the rock of crack.

Thus, in light of *Iron*, *Bates*, and *Jacobson*, Defendant's own actions amply demonstrated his predisposition to commit the crime. At trial, Defendant took the stand and admitted being a drug user; however, he denied being a drug seller. Although the State introduced evidence of Defendant's prior record, including a conviction for possession of cocaine, the current conclusion is not dependent upon said evidence. In light of Defendant's actions and the circumstances of the offense at issue, his prior record is superfluous.

For the reasons discussed, the assignment lacks merit.

## DECREE

Defendant's conviction is affirmed.

**AFFIRMED.**

7